UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CALVIN ALSTON, )<br>)<br>       Plaintiff )<br>)<br>)<br>v. )<br>)<br>FEDERAL BUREAU OF PRISONS, et al. )<br>)<br>       Defendants. )<br>) | Civil Action No. 05-1204 (RCL)<br>(ECF) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

    Defendant, Federal Bureau of Prisons ("BOP"), by and through its undersigned counsel, respectfully submit its Reply in support of Defendant's Motion to Dismiss. ("Def's. Motion"). Plaintiff's opposition, in summary, argues that (1) although he originally claimed that the BOP violated his Fourteenth Amendment right to due process, he now believes the BOP has violated his Fifth Amendment rights for classifying him as a sex offender without having ever been convicted of a sex offense, Pltf.'s Opp. at ¶ 1;(2) and he was denied placement in a halfway house due to his classification as a sex offender, Pltf.'s Opp. at ¶ 2. In sum, plaintiff merely restates the issues presented in his original complaint under the guise of the Fifth Amendment.

    Plaintiff, however, has provided no evidence to rebut defendant's arguments stated in defendant's Motion to Dismiss and his complaint still suffers from numerous fatal deficiencies.

    A.    **Sovereign Immunity Bars Constitutional Claims**

    The Plaintiff has named the BOP as the only defendant. A plaintiff cannot sustain an action for damages based on constitutional violations against government agencies. An action for damages based upon constitutional violations can only be maintained against individual

defendants and cannot be brought against the United States or an agency thereof. FDIC v. Meyer, 510 U.S. 471 (1994).

### B.     Inmates Do Not Have a Right to Specific Place of Confinement

Designation of a facility of confinement is a function wholly within the discretion of the BOP. See, Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). Inmates have no right to be housed in a particular institution or in an institution of their choice. Powell v. Department of Corrections, 647 F. Supp. 968 (N.D. Okla. 1986); Meachum, supra; Montanye v. Haymes, 427 U.S. 236 (1976); Grayson v. Rison, 945 F.2d 1064 (9th Cir. 1991); Beard v. Livesay, 798 F.2d 874 (6th Cir. 1986); Leibowitz v. U.S., 729 F. Supp. 556 (E.D. Mich. 1989), aff'd without opinion, 914 F.2d 256 (6th Cir. 1990); U.S. v. Rocha-Leon, 187 F.3d 1157, 1159 (9th Cir. 1999).

### C.     Inmates Do Not Have a Right to Classification of Their Choice

Inmates in the custody of the BOP do not have a right to a specific custody classification. See Moody v. Daggett, 429 U.S. 78 (1976); Meachum v. Fano, 427 U.S. 215 (1976); Jones v. United States, 534 F.2d 53, cert. denied, 429 U.S. 978 (1976); Solomon v. Benson, 563 F.2d 339 (7th Cir. 1977); Beard v. Livesay, 798 F.2d 874 (6th Cir. 1986). Neither do inmates have a protected liberty interest in their security classifications. Meyer v. Reno, 911 F. Supp. 11, 17 (D.D.C. 1996); Olim v. Wakinekona, 461 U.S. 238 (1983); Slezak v. Evatt, 21 F.3d 590 (4th Cir.), cert. denied, 115 S. Ct. 235 (1994); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert denied, 429 U.S. 846 (1976)(inmates have neither protected liberty interests nor property interests in custodial classification.); and Neals v. Norwood, 59 F.3d 530 (5th Cir. 1995) (A prison inmate does not have a protected interest in his custodial classification and the inmate's

disagreement with the classification is insufficient to establish a constitutional violation.); Wilson v. Budney, 976 F.2d 957 (5th Cir. 1992), citing Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir.), cert. denied, 488 U.S. 985 (1988) (inmate has no protected liberty or property interest in his custodial classification).

    Classification decisions are clearly within the realm of matters left to the unfettered discretion of the Bureau of Prisons. The Supreme Court has repeatedly held that prison officials have broad administrative and discretionary authority over the institutions they manage. Hewitt v. Helms, 459 U.S. 460, 467 (1983). Broad discretionary authority is necessary because the administration of a prison is at best an extraordinarily difficult undertaking. Courts should not be too ready to exercise oversight and put aside the judgment of prison administrators. Wolff v. McDonnell, 418 U.S. 539, 566 (1974). The wide spectrum of discretionary actions which have traditionally been the business of prison administrators rather than the courts should not be subjected to close judicial review. Meachum, supra at 225.

    The BOP has been entrusted with the administration of the federal correctional system. As a result, the BOP is charged with the classification and treatment of prisoners. See 18 U.S.C. § 4081 (which reads that ". . . the proper classification and segregation of Federal prisoners [is done] according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed in such institutions.") See Moody v. Daggett, 429 U.S. 78 (1976) (stating that Congress delegated to the BOP the classification of federal inmates and their eligibility to participate in programs and thus such decisions implicate "no legitimate statutory or constitutional entitlement").

The plaintiff challenges his BOP classification as a "Sex Offender" as he contends he was never convicted of a sex offense. See Complaint, page 1. The BOP classified the plaintiff as a "Sex Offender"[1] based on the description of the offense for which he was convicted as contained in his PSI.[2] Program Statement 5100.07 does not require a conviction for a sex offense in order to apply the "Sex Offender" classification. See fn. 3. See also Doyon, supra, at 2 (recognizing that "[i]n making custody classification decisions, BOP may take into account evidence of a prisoner's behavior even if the behavior did not result in a conviction").

The plaintiff's classification as a "sex offender" was done in accordance to the BOP policy. He has failed to state a claim regarding his challenge to his custody classification.

---

[1] BOP Policy specifically states that:

> . . . A conviction is not required for the application of the [sex offender classification] if the PSI, . . . clearly indicates the following behavior occurred in the current term of confinement or prior criminal history. . . .

[The classification of "sex offender" will be applied when the prisoner was:]

> (1) Engaging in sexual contact with another person without obtaining permission to do so (forcible rape, sexual assault or sexual battery);
>
> . . .
>
> (4) [Involved in] [a]ny sexual act or contact not identified above that is aggressive or abusive in nature (***rape by instrument***, encouraging use of a minor for prostitution purposes, incest). . . .

See Attachment B: Program Statement 5100.07, Security Designation and Custody Classification Manual, Chapter 7, page 2 (September 3, 1999) (emphasis added).

[2] The conviction for murder in the second degree involved the insertion of a blunt metal object through the female victim's rectum. See Attachment C: relevant section of the Defendant's PSI.

**D. Plaintiff Has Failed to State a Fifth Amendment Claim**

The plaintiff asserts in his complaint that the defendant violated his Fifth Amendment right to due process by classifying him as a sex offender and denying his placement in a halfway house ("halfway house" is the generic term for a community correction center, also known as "CCC"). See Pltf.'s Opp. at ¶ 1-2. Plaintiff's due process claims are without merit.

To state a claim for a violation of rights under the Due Process Clause of the Fifth Amendment, an inmate must identify a protected liberty or property interest that has been denied. See Sandin v. Conner, 515 U.S. 472, 477 (1995). In order for a liberty interest to be involved, an inmate must either allege that defendants' actions increased his period of confinement or that additional restrictions were placed upon him that imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484, 487; Neal v. District of Columbia, 131 F.3d 172, 174-75 (D.C. Cir. 1997).

Placement or denial of placement in a halfway house facility does not create a liberty interest. Ostrer v. Bureau of Prisons, 1989 WL 128033, at 1 (D.C. Cir. Sept. 6, 1989). In Oster, the D.C. Circuit reasoned that [t]he prison regulations governing halfway house placement do not contain either "explicitly mandatory language" or any "particularized standards or criteria" limiting the Bureau of Prisons' discretion which give rise to any constitutionally protected interest in halfway house placement. Id. See, e.g., Kentucky Department of Corrections v. Thompson, 490 U.S. 454 (1989); Olim v. Wakinekona, 461 U.S. 238, 249 (1983).

Decisions concerning whether a prisoner should be confined in a CCC are "commonplace judgments" that the court must review under Sandin because they involve the "day-to-day management of prisons." Franklin v. District of Columbia, 163 F.3d 625, 634-5 (D.C. Cir. 1998)

(quoting Sandin, 515 U.S. at 482).

Turning the focus onto Sandin, the D.C. Circuit has already provided instruction on Sandin's applicability to prison placement. In Franklin, the D.C. Circuit clarified that housing determinations do not give rise to liberty interests and explained that [d]ecisions about where a prisoner should be confined, at what level of custody[ ] (maximum, close, medium, minimum, or community ) he should be classified, when he should be transferred and so forth are commonplace judgments in the "day-to-day management of prisons." Id.; Sandin, 515 U.S. at 482. Unless the prisoner is subjected to some extraordinary treatment, such as transfer to a mental hospital, [ ] the effect of those judgments on prisoners-that is, the restriction of their liberty-is the ordinary consequence of confinement for committing a crime. Franklin, 163 F.3d at 634-35.

In the plaintiff's case, he has not been subject to any "extraordinary treatment" because prison housing and transfers are issues within the "day-to-day management of prisons." Sandin, 515 U.S. at 484. Because the plaintiff's placement is a day-to-day prison management issue, his custodial status change from a prison to a CCC does not constitute an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Id.; Smith v. U.S., 277 F. Supp. 2d 100, 113 (D.D.C. 2003). For this reason, the petitioner has no liberty interest in a CCC. Id.

Furthermore, Courts have long recognized that the authority to incarcerate, classify and transfer federal prisoners falls within the broad discretion of the BOP. See 18 U.S.C. § 3621(b). Therefore, plaintiff's claim that defendant violated his Fifth Amendment rights denying his placement in a halfway house fails to implicate any liberty interest and should be dismissed.

### E. Equal Protection

Plaintiff does not explicitly assert an equal protection claim, but alleges facts in both his complaint and his opposition that can be reasonably construed as asserting such a claim. Specifically, plaintiff identifies one fellow co-defendant who he alleges was given CCC placement when he was not. See Pltf.'s Opp. at ¶ 2. Plaintiff claims that defendants have shown "unequal treatment" toward plaintiff compared his co-defendant. Id. "[T]he unequal application of a law, fair on its face, may act as denial of equal protection." Brandon, 823 F.2d at 650.

However, because plaintiff does not establish that he is a member of a suspect class or that his alleged unequal treatment burdens a fundamental right, the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating him differently bear some rational relationship to a legitimate state purpose. Tucker v. Branker, 142 F.3d 1294, 1300 (D.C. Cir. 1998); Brandon, 823 F.2d at 650. In addition, plaintiff must show that defendant's actions in discriminating against him were intentional or purposeful. Brandon, 823 F.2d at 650.

As a threshold matter, plaintiff's cursory description of his "co-defendant" does not establish that he was "similarly situated" to the co-defendant. There are several factors considered in determining a prisoner's custody classification other than length of sentence and type of offense. The equal protection clause "does not require things which are different in fact or opinion to be treated in law as though they were the same." Women Prisoners of the District of Columbia Dep't of Corrections v. District of Columbia, 93 F.3d 910, 924 (D.C. Cir. 1996) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).

Moreover, plaintiff offers no evidence to support a conclusion that defendant's denial of

7

plaintiff's placement in a CCC was the result of a constitutionally impermissible motive. The BOP executed its discretion in not placing the plaintiff in a halfway house. In accordance with BOP policy, plaintiff was not eligible for halfway house placement due to his classification as a sex offender. See Attachment A: Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure Section 10a (12/16/98)(explaining that "[i]nmates in the following categories shall not ordinarily participate in CCC programs: (1) Inmates who are assigned a "sex offender" public safety factor.").

Because plaintiff has offered no evidence of unconstitutionally discriminatory motive in defendant's basis for denying his placement in a CCC, plaintiff's complaint should be dismissed. James v. Reno, 39 F. Supp. 2d 37, 41 (D.D.C. 1999); see also, Marshall v. Reno, 915 F. Supp. 426, 432 (D.D.C. 1996) (dismissing equal protection claim because plaintiff had not alleged that failure to transfer or deport him was the product of unconstitutionally discriminatory motive).

## Conclusion

Plaintiff has presented no evidence to overcome the numerous deficiencies in his complaint. For the foregoing reasons, Defendant's Motion to Dismiss should be granted and this action should be dismissed.

December 27, 2005                              Respectfully submitted

    /s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


    /s/
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


    /s/
JOHN F. HENAULT, D.C. BAR #472590
Assistant United States Attorney
555 4th St., N.W. - Civil Division
Washington, D.C.  20530
(202) 307-1249

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this ___27th___ day of December 2005, I caused the foregoing Reply in Support of Defendant's Motion to Dismiss thereof to be served on plaintiff *pro se*, postage prepaid and addressed as follows:

Calvin Alston
1175 Third Street, NE
Washington, DC 20002

                                      /s/
                              JOHN F. HENAULT, D.C. BAR #472590
                              Assistant United States Attorney